**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **ARTHUR LEE**, Defendant–Appellant

NO. 16299

(CR. NO. 88–0232(3))

NOVEMBER 24, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

OPINION OF THE COURT BY WATANABE, J.

The dispositive issue in this appeal is whether a defendant's probation may be revoked for his failure to comply with a special condition of probation, even though he was never provided with written notice of that condition, as required by Hawai'i Revised Statutes (HRS) § 706–624(3) (Supp. 1992).

We answer in the negative and accordingly reverse the judgment below.

## BACKGROUND

Following his plea of no contest to a charge of Sexual Assault in the Third Degree, Defendant–Appellant Arthur Lee (Defendant) was sentenced on January 11, 1989, to a term of five years' probation and twelve months in jail. Defendant's jail term, however, was suspended, on the condition that Defendant abide by certain "Special Terms and Conditions of Probation." Special Condition 5, as set forth in the court's written judgment, provided:

> You must not make or attempt to make any contact, directly or indirectly, with the victim, without the prior knowledge and authorization of the Probation Officer.

Record on Appeal (R.A.) at 34.

The court clerk's minutes of Defendant's sentencing hearing, however, record a slightly different condition. According to the minutes, Defendant:

> Must not make or attempt to make any contact, directly or indirectly, with the victim or any other party signi[f]icantly related to the victim, without the prior knowledge and authorization of the Probation Officer.

R.A. at 52.

Because of the discrepancy, the State of Hawai'i (State), on January 7, 1992, filed a Motion to Clarify Judgment and Sentence, requesting that the written judgment be modified to specify which individuals, in addition to the victim, were part of the court's no–contact provision.

Defendant was present at the January 22, 1992 hearing on the State's motion. At the conclusion of the hearing, the court orally granted the State's motion, with certain modifications to allow Defendant to visit with Amanda and Zion, his natural children. The court also admonished

Defendant not to contact certain individuals, without approval of his probation officer:

> THE COURT: Now, I might make one thing clear, [Defendant]. All these people that you're not supposed to be having contact with, you can have contact with them as far as I can see if you notify the probation officer and he says, okay, fine.
>
> [DEFENDANT]: I understand that, Your Honor.
>
> THE COURT: So if your ex–wife comes and visits or you want to go visit your ex–wife[1] that is, you can go talk to her and visit her so long as you touch basis [sic] with the probation officer.
>
> [DEFENDANT'S COUNSEL]: If she's at your door, call the probation officer before you let her in.
>
> [DEFENDANT]: I understand that, Your Honor. The trouble is that she's — she keeps calling my probation officer saying that I'm threatening her life and then she comes lives next door to me and stuff.
>
> [DEFENDANT'S COUNSEL]: We'll have to work it out, Your Honor. Thank you. [Footnote added.]

1/22/92 Tr. at 21–22.

The court thereafter entered a written Order Granting Motion to Clarify Judgment and Sentence, which amended Special Condition 5 to read:

---

[1] Although the court refers to Robin Jehle as Defendant's ex–wife, it does not appear from the record that Defendant and Robin were ever officially married.

Defendant must not make or attempt to make any contact, directly or indirectly, with the victim without the prior knowledge and authorization of the Probation Officer, including:

1. Robin Lim Jehle (Robin) [victim's mother, with whom Defendant lived for five years];
2. Edward A. Bernhardt;
3. Edward N. Bernhardt;
4. Amanda Zhou Lee (Amanda) [Defendant's natural child with Robin];
5. Zion Pao Shun Lee (Zion) [Defendant's natural child with Robin];
6. Robert Jehle [Robin's father]; and
7. Chesencia Jehle [Robin's mother]

with the further provision that any contact allowed by a Family Court order between Defendant and Amanda Zhou Lee and Zion Pao Shun Lee shall be allowed.

R.A. at 66–67 (identification of parties involved added in brackets). The form of the lower court's written order was approved by Defendant's trial counsel, whose approval signature appears on the document. R.A. at 67. Defendant, however, was never provided with a written copy of the order.

On May 5, 1992, the State moved to revoke Defendant's probation, alleging that Defendant had violated the amended Special Condition 5 by making "contact with Robin Lim Jehle, Amanda Zhou Lee, and Zion Pao Shun Lee, without the prior knowledge and authorization of his Probation Officer." R.A. at 72.

The alleged probation violation occurred on May 4, 1992 when Defendant saw Robin's van in front of his house

and decided to follow it in his car. Defendant hoped to serve some family court papers on Robin, who, according to Defendant, had been evading service by sheriffs. When Robin stopped at the Eddie Tam Gym to summon police, Defendant stopped as well, hoping to get a police officer stationed at the gym to serve Robin with the papers. When Defendant got out of his car, however, he was intercepted by Robin's then–boyfriend, and a fight ensued between them. Shortly thereafter, police officers arriving at the scene arrested Defendant for probation violation, claiming that Defendant had improperly made contact with Robin and with Defendant's two natural children, who were in Robin's vehicle at the time.

At the June 17, 1992 hearing on the State's motion, Defendant tried to explain that he was not aware of the modified conditions of probation. The court, however, refused to hear such testimony:

> THE COURT: [Defendant], I'm not going to listen to that, okay? I said right here what the Court's order was. It is written, I signed it. Your attorney approved it as to form. I'm not going to get into whether you understood or not.
>
> THE DEFENDANT: Okay. That's true, Your Honor but I —
>
> THE COURT: It's understood that you understood, period. Okay?

6/17/92 Transcript at 64.

The court thereupon granted the State's Motion for Probation Revocation and resentenced Defendant to serve an additional five–year probation period, subject to the same terms and conditions as previously ordered. The court also modified its prior suspended sentence of twelve months' incarceration and ordered Defendant to serve

thirty (30) days' jail time, with the remaining eleven months suspended if Defendant complied with the terms and conditions.

This timely appeal followed.

## DISCUSSION

It is undisputed that Defendant did not receive written notice of the modified conditions of his probation. The State submits, however, that because Defendant received actual notice of the modified conditions, and his trial counsel approved the form of the lower court's order imposing the modified conditions, revocation of Defendant's probation for violation of a modified condition was authorized. Answering Brief at 11. We disagree.

We are aware of the Hawai'i Supreme Court's ruling in *State v. Huggett*, 55 Haw. 632, 525 P.2d 1119 (1974), that a defendant may have his probation revoked for failure to comply with a probation condition, even though he received only oral, not written, notice of the condition. 55 Haw. at 636–37, 525 P.2d at 1123. *Huggett*, however, involved an offense committed in 1971, prior to the effective date (January 1, 1973) of the Hawai'i Penal Code.

The Hawai'i Penal Code mandates that a defendant be provided with written notice of the terms and conditions of his probation. Specifically, HRS § 706–624 (Supp. 1992), which is entitled "Conditions of probation," provides in subsection (3) as follows:

> Written statement of conditions. The defendant shall be given a written copy of any requirements imposed pursuant to this section, stated with sufficient specificity to enable the defendant to guide the defendant's self accordingly.

The Commentary to HRS § 706–624 (1985) indicates that the written notice requirement "is an addition to the

law suggested by the Model Penal Code and accepted in other states. The intent is to provide the defendant with notice of what is expected of him in a form which will not escape his memory."

In view of the plain mandate and legislative purpose of HRS § 706–624, we conclude that since Defendant was never given a written copy of the conditions of his probation, it was error for the trial court to revoke Defendant's probation for violation of a probation condition.

We note that in *State v. Medina*, 72 Haw. 493, 824 P.2d 106 (1992), the Hawai'i Supreme Court upheld the dismissal of charges against a defendant for violating a court order temporarily restraining him from contacting, threatening, or physically abusing a woman. Although the defendant had actual knowledge of the order, he had never been personally served with the order, contrary to HRS § 586–6, which then provided:

> Any order issued under this chapter shall be personally served upon the respondent unless the respondent was present at the hearing in which case the respondent may be served by regular mail.

The supreme court found "unconvincing" the State's argument that the defendant's actual knowledge of the existence of the order was sufficient to allow prosecution for its violation. 72 Haw. at 494, 824 P.2d at 107. The court reasoned:

> Where statutory language is plain and unambiguous, that language must ordinarily be regarded as conclusive unless literal application would produce an absurd or unjust result clearly inconsistent with the purposes and policies of the statute. *State v. Palama*, 62 Haw. 159, 612 P.2d 1168 (1980). The plain wording of HRS

§ 586–6 requires personal service of an order. The only stated exception is where the respondent is present at the hearing at which the order issues, in which case the order may be mailed. In all other cases we believe that the personal service requirement eliminates any chance of misunderstanding or confusion by providing assurance that a defendant prosecuted under the provisions of HRS § 586–11 has received a written copy of the order, and therefore, knows the exact content of the order.

*Id.*

The requirement of HRS § 706–624(3) that a defendant be provided with a written statement of the conditions of his probation also provides assurance that a defendant will know the exact terms and conditions of his probation before his probation can be revoked for failure to comply with the terms and conditions.

Reversed.


*Joyce K. Matsumori–Hoshijo*, Deputy Public Defender, on the briefs for defendant–appellant.

*James B. Takayesu*, Deputy Prosecuting Attorney, County of Maui, on the brief for plaintiff–appellee.