904 P.2d 525

STATE of Hawai'i, Plaintiff–Appellee,

v.

Hirotoshi YAMAMOTO, Defendant–Appellant.

Nos. 16531, 16468 *.

Supreme Court of Hawai'i.

Oct. 11, 1995.

---

* By order dated November 30, 1992, this court consolidated Nos. 16531 and 16468.

Robert K. Merce, on the briefs, Honolulu, for defendant-appellant.

Lawrence A. Goya, Deputy Attorney General, on the briefs, Honolulu, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Defendant-appellant Hirotoshi Yamamoto appeals the circuit court's "Order of Resentencing; Revocation of Probation" and "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion for Correction and Reduction of Sentencing and Relief from Judgment." Yamamoto argues several points of error on appeal.[1] Nevertheless, the dispositive issue is whether the court abused its discretion in revoking Yamamoto's probation when he complied with the

manner of restitution payments, *i.e.*, made payments of $50.00 per month which were required as a condition of his probation, but failed to pay the entire $118,000.00 in restitution.

For the reasons discussed below, we reverse the court's "Order of Resentencing; Revocation of Probation" and "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion for Correction and Reduction of Sentencing and Relief from Judgment."

## I. FACTS

This case spans more than a decade and involves (1) Yamamoto's embezzlement of funds from Manoa Finance Company (MFC) in 1983, (2) the liquidation of MFC's assets, (3) Yamamoto's 1986 conviction of embezzlement, and (4) the revocation of Yamamoto's probation in 1992.

### A. The Embezzlement Of MFC Funds

From June 1981 to February 1983, Yamamoto was the president of MFC, an industrial loan company that operated primarily by taking in deposits from the public. During the early 1980's, MFC experienced a financial crisis. MFC's debt-to-equity ratio[2] was 39.8 to 1, exceeding the 10-to-1 ratio required by state law. Consequently, MFC required a cash infusion of $4.9 million to meet state regulatory requirements to continue operations.

Under these financial conditions, Yamamoto bought property in California at cost from National Braemar, a subsidiary wholly owned by MFC, for $10,999.00. Two days

---

1. Yamamoto argues that the circuit court erred: (1) in resentencing him to another term of probation, thereby violating his constitutional rights to due process and equal protection; (2) in ordering him to pay restitution to the State of Hawai'i (the State) because the State was not a victim, and that even if the State was a victim, it did not sustain an actual loss; (3) in finding that he is able to pay the entire amount of restitution despite his claim that he lacks the funds to make payments; (4) in forcing him to execute a promissory note for the amount of restitution owed; and (5) in imposing conditions of probation (that he refrain from alcohol and drugs, waive extradi-

tion, and submit to warrantless searches) that are not reasonably related to the offense.

2. A debt-to-equity ratio represents the relationship between the value of outstanding certificates and/or debentures held by a financial institution versus the value of paid-up capital and surplus held by the same institution. This ratio provides a safety net for depositors by limiting the value of deposits that can be accepted by a financial institution that cannot be backed by the financial institution's equity. HRS § 408–14(c) (Supp. 1992) specifies the formula for determining a proper debt-to-equity ratio as required by law.

later, Yamamoto sold the property to SSK Investments in his own name for $800,000.00, which was to be paid in installments. Eventually, Yamamoto received $344,100.94 from SSK Investments. Of that total, $225,175.00 flowed to MFC; however, Yamamoto personally kept $118,925.94—the transaction that formed the basis of Yamamoto's embezzlement conviction.

### B. *The Bankruptcy, Reorganization, And Dissolution Of MFC*

In February 1983, the State closed MFC and placed it into receivership because, *inter alia,* MFC did not maintain the 10-to-1 debt-to-equity ratio required by state law. The State also appointed Thrift Guaranty Corporation (Thrift) to act as the receiver of MFC and provided an immediate return of MFC's depositor's funds. Yamamoto thereafter filed a petition for voluntary reorganization under Chapter 11 of the Bankruptcy Code.

Pursuant to the Chapter 11 Reorganization Plan, the bulk of MFC's assets were purchased by Thrift for approximately $27.5 million, which went to the bankruptcy estate for the purpose of paying the claims of all MFC depositors and creditors, including expenses and taxes. The plan also provided that Thrift would keep any surplus funds that remained after selling off MFC's assets and any surplus money left in the bankruptcy estate after debts and expenses were paid—ensuring that no money would be distributed to the stockholders of MFC.

When MFC's bankruptcy was closed in 1990, a cash balance of approximately $147,740.00 remaining in the estate was transferred to Thrift. Thrift was later dissolved in 1991, when the legislature repealed the statute granting its authority. *See* 1991 Haw.Sess.L.Act 109, § 4 at 244. Thereafter, MFC's assets, which were initially transferred to Thrift, were shifted to the State.[3]

### C. *The 1985 Criminal Proceeding*

On December 11, 1985, plaintiff-appellee State of Hawai'i (the prosecution) indicted Yamamoto on eleven counts of embezzlement in violation of Hawai'i Revised Statutes (HRS) § 408-30 (1985)[4]. Count six of the indictment charged that Yamamoto illegally benefited from the sale of portions of the California property to the detriment of MFC. On August 22, 1986, Yamamoto was convicted of count six; all other charges were dismissed or resulted in acquittal.

On October 29, 1986, Yamamoto was sentenced. The circuit court sentenced Yamamoto (1) to pay $118,000.00 in restitution and (2) to serve a five-year term of probation. The special conditions of probation required, *inter alia,* that:

> [Yamamoto] must pay the restitution at the rate of FIFTY DOLLARS ($50) per month commencing January, 1987; the payment schedule may be modified by the filing of a motion by the State of Hawai[']i or the Adult Probation Division, as necessitated by changes in your employment or other pertinent personal circumstances, to

**3.** We note that although Yamamoto embezzled about $118,000.00 from MFC, *see* discussion *supra,* the State became, for all practical purposes, a victim of Yamamoto's wrongdoings. When Thrift acquired the assets of MFC, which included the approximately $118,000.00 owed by Yamamoto, Thrift "stepped into the shoes" of MFC. When the State acquired these assets from Thrift, the State in turn "stepped into the shoes" of MFC—acquiring the right to the approximately $118,000.00 embezzled by Yamamoto.

**4.** HRS § 408-30 (1985) (repealed 1993) provides:

> **Embezzlement of funds or assets; penalty.** Every officer, director, or employee of an industrial loan company who embezzles, abstracts, or willfully misapplies any of the moneys, funds, credits, assets, or property of the

industrial loan company, whether owned by the industrial loan company or held for safekeeping or as agent, or held in trust; or who, without authority of investment certificate, draws any order, draft, or bill of exchange, makes acceptance, assigns any note, bond, draft, bill, bill of exchange, mortgage, judgment, or decree, or makes any false entry in the books or statements of the industrial loan company, with the intent in any case to injure or defraud the industrial loan company or any officer thereof; or who, with like intent, aids or abets any other officer, director, or employee of any industrial loan company in any violation of this section; shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(Bold in original.)

be made in accordance with the Adult Probation Division's restitution computation formula.

Between the commencement of Yamamoto's sentence in 1987 and the revocation of his probation and resentencing in 1992, Yamamoto complied with the court order by "pay[ing] the restitution at the rate of FIFTY DOLLARS ($50) per month." The prosecution has not filed any motions to modify the monthly payment schedule.

### D. The 1992 Revocation Of Probation And Resentencing

Yamamoto's five-year probationary period was scheduled to end on October 28, 1991. On October 22, 1991, the prosecution moved to revoke probation and to have Yamamoto resentenced on the grounds that, although he had paid $50.00 a month as ordered, he had failed to pay the entire $118,000.00 during the five-year period.

On April 6, 1992, the court granted the prosecution's motion and resentenced Yamamoto to a second five-year probationary term. In addition, the court ordered Yamamoto to continue to pay "at least $50.00 a month restitution" until the balance of the restitution ($114,850.00) was paid, to execute a promissory note that was non-dischargeable in bankruptcy for the $114,850.00, to refrain from using drugs and alcohol, to waive extradition, and to submit to warrantless searches.

On July 6, 1992, Yamamoto moved for correction and reduction of sentence and relief from judgment. He also submitted an income and expense statement that indicated income of $4,234.00 a month, expenses of $4,860.00 a month, assets of $220,051.16 (most of which were encumbered by liens), and approximately $5 million in debt.

On August 17, 1992, the circuit court orally denied the motion. Yamamoto thereafter filed a notice of appeal from: (1) the April 6, 1992 Order of Resentencing; Revocation of Probation; and (2) the order denying his Motion for Correction and Reduction of Sentence and Relief from Judgment entered on August 17, 1992.

On September 28, 1992, the circuit court entered its Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion for Correction and Reduction of Sentence and Relief from Judgment. The court found, *inter alia*, that "[Yamamoto's] record of restitution payments show[ed] a pattern of payments in which he paid in installments of at least $150.00, except for April 3, 1987; May 1, 1987; and May 6, 1987, when he made payments of $50.00; $50.00; and $20.00; respectively." In addition, the court concluded, *inter alia*, that the revocation of Yamamoto's probation was proper because "the court [was] not limited to finding a willful violation of a condition of probation ..., but [could] also consider whether the rehabilitation goals of [Yamamoto's] first probationary goals were met."

Yamamoto, thereafter, filed a second notice of appeal from: (1) the April 6, 1992 Order of Resentencing; Revocation of Probation; and (2) the September 28, 1992 Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion for Correction and Reduction of Sentence and Relief from Judgment. On November 30, 1992, we consolidated both appeals.

### II. STANDARD OF REVIEW

█ Whether probation should be granted, revoked, or modified lies solely within the discretion of the sentencing court.... While the power of the court to revoke or to modify the conditions of probation is well established, the exercise of this authority must rest upon the sound and enlightened judgement of the trial court. And where the record reflects justifiable cause for the revocation or the modification of probation terms, the trial court's determination will be sustained. *State v. Huggett*, 55 Haw. 632, 635–36, 525 P.2d 1119, 1122 (1974) (citation and footnotes omitted). *Cf. State v. Lee*, 10 Haw.App. 192, 862 P.2d 295 (1993) (recognizing that *Huggett* was superseded by statute, but on other grounds).

### III. DISCUSSION

█ The dispositive issue is whether the court abused its discretion in revoking Yamamoto's probation when he complied with the

*manner* of restitution payments, *i.e.*, made the payments of $50.00 per month required as a condition of his probation, but failed to pay the entire amount—$118,000.00—of the restitution.,

HRS § 706–625(c) (Supp.1992) authorizes a sentencing court to "revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order . . . ." Accordingly, if a defendant fulfills all conditions of his or her probation, a sentencing court may not later revoke the defendant's probation for failing to comply with those conditions.

In this case, the circuit court originally sentenced Yamamoto: (1) to pay $118,000.00 in restitution; and (2) to serve a five-year term of probation that included, *inter alia*, a condition requiring him to "pay restitution at the rate of [$50.00] per month." Between the commencement of Yamamoto's sentence in 1987 and the revocation of his probation in 1992, the prosecution never filed any motions to modify this $50.00 per month payment schedule. In addition, during this time, Yamamoto complied with all the conditions of probation, including the condition requiring him to "pay the restitution at the rate of [$50.00] per month." However, despite Yamamoto's full compliance with these conditions, the sentencing court in 1992 revoked his probation on the grounds that Yamamoto had inexcusably failed to comply with a substantial condition of his probation, *i.e.*, had failed to pay the entire $118,000.00 in restitution during his five-year term of probation.

In revoking Yamamoto's probation, the sentencing court in the instant case erroneously assumed that the order to pay $118,000.00 in restitution was a condition of his probation. In actuality, the restitution order was an authorized free-standing sanction imposed in combination with Yamamoto's sentence of probation. *See* HRS § 706–605(1)(d) (1993); *State v. Gaylord*, 78 Hawai'i 127, 154, 890 P.2d 1167, 1194 (1995) (recognizing that "an order of restitution . . . is available as a free-standing sanction to be imposed alone or in combination with other sanctions") (internal quotation marks, internal brackets, and citation omitted). With regard to the restitution actually due as a condition of Yamamoto's probation, Yamamoto was only required to make payments of $50.00 per month for the five-year term of his probation—which he did.

We do recognize that "[Yamamoto's] record of restitution payments shows a [general] pattern of payments . . . of at least $150.00" and, therefore, demonstrates his ability to make larger monthly restitution payments to the State. However, if the prosecution believed that Yamamoto could have afforded to make greater monthly payments, *e.g.*, payments of at least $150.00 per month, the prosecution should have moved the sentencing court to correct or modify Yamamoto's original sentence.[5]

Accordingly, because Yamamoto paid the $50.00 per month as ordered and there was no other justifiable cause to revoke Yamamoto's probation, we hold that the sentencing

---

5. We also note that, although Yamamoto failed to pay the entire $118,000.00 in restitution during his five-year term of probation, the sentencing court is not powerless to collect the balance of the restitution due. For example, HRS § 706–644 (1993) provides:

(1) When a defendant sentenced to pay a fine or restitution defaults in the payment thereof or of any installment, the court, upon the motion of the prosecuting attorney or upon its own motion, may require defendant to show cause why defendant's default should not be treated as contumacious and may issue a summons or a warrant of arrest for defendant's appearance. Unless the defendant shows that defendant's default was not attributable to an intentional refusal to obey the order of the court, or to a failure on defendant's part to make a good faith effort to obtain the funds required for the payment, the court shall find that defendant's default was contumacious and may order defendant committed until the fine, restitution, or a specified part thereof is paid.

(2) When a fine or restitution is imposed on a corporation or unincorporated association, it is the duty of the person or persons authorized to make disbursement from the assets of the corporation or association to pay it from those assets, and their failure so to do may be held contumacious unless they make the showing required in subsection (1).

(3) The term of imprisonment for nonpayment of fine or restitution shall be specified in the order of commitment, and shall not exceed one day for each $25 of the fine, thirty days if the fine was imposed upon conviction of a violation or a petty misdemeanor, or one year in any other case, whichever is the shorter period. A person committed for nonpayment of a fine or restitution shall be given credit toward payment for each day of imprisonment, at the rate of $25 per day.

court abused its discretion in revoking his probation.[6]

### IV. *CONCLUSION*

For the reasons mentioned above, we reverse the court's "Order of Resentencing; Revocation of Probation" and "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion for Correction and Reduction of Sentencing and Relief from Judgment."

(4) If it appears that the defendant's default in the payment of a fine or restitution is not contumacious, the court may make an order allowing the defendant additional time for payment, reducing the amount thereof or of each installment, or revoking the fine or restitution or the unpaid portion thereof in whole or in part.

(5) Upon any contumacious default in the payment of a fine or restitution or any installment thereof, execution may be levied and such other measures may be taken for the collection of the fine, or restitution, or the unpaid balance thereof as are authorized for the collection of an unpaid civil judgment entered against the defendant in an action on a debt. The levy of execution for the collection of a fine or restitution shall not discharge a defendant committed to imprisonment for non-payment of the fine or restitution until the amount of the fine or restitution has actually been collected or accounted for under subsection (3).

(Bold in original.)

6. Because we hold that the circuit court abused its discretion in revoking Yamamoto's probation, we need not address the other issues on appeal. *See supra* note 1.

Nonetheless, we note that HRS § 706–623 (1993) would prohibit a court from ordering a defendant to sign a promissory note for the balance of restitution owed as a condition of probation. HRS § 706–623 provides in relevant part: "[w]hen the court has sentenced a defendant to be placed on probation, the period of probation shall be *five years* upon conviction of a felony ... unless the defendant is sooner discharged by order of the court." (Emphasis added.) Accordingly, all conditions of probation must come to term within five years pursuant to HRS § 706–623. Because a condition of probation to sign a promissory note would make a defendant civilly liable to the State for an indefinite period of time and, therefore, would not come to terms within five years, we believe that such a condition would be illegal in violation of HRS § 706–623.

On the other hand, if the restitution order is not a condition of probation but an authorized free-standing sanction, the procedure to enforce payment is provided for by HRS § 706– 644 (1993). *See supra* note 5.