81 P.3d 1184

**STATE of Hawai'I, Plaintiff–Appellee,**

v.

**Raymond FELICIANO, III, Defendant–Appellant.**

**No. 23911.**

Supreme Court of Hawai'i.

Dec. 29, 2003.

James S. Gifford (Linda C.R. Jameson on the brief), Deputy Public Defenders, for defendant-appellant.

Alexa D.M. Fujise, Deputy Prosecuting Attorney, City and County of Honolulu, for plaintiff-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, JJ., and Intermediate Court of Appeals Judge Lim, Assigned by Reason of Vacancy.

Opinion of the Court by ACOBA, J.

We hold that as to a case that predated July 20, 1998, the effective date of amendments to Hawai'i Revised Statutes (HRS) § 706–644 (Supp.1997), a free standing order of restitution (FSO) could have been separately and independently imposed at the time of a defendant's original sentencing, in addition to any other sentence such as probation or imprisonment. However, a FSO could not be imposed as a modification of a probation condition, or as a new term of probation following revocation, or otherwise. From and after July 20, 1998, the amended provisions of HRS § 706–644 statutorily provide for FSOs to be imposed *inter alia*, as a condition of probation. In this case, the first circuit court (the court)[1] orally imposed on

1. The Honorable Michael A. Town presided over this matter.

2. Although the court orally indicated the order was entered on its inherent power as well as a statutory basis, the court's written order rests only on HRS § 706–644.

3. The Honorable D. Del Rosario presided over Defendant's sentencing hearing.

March 28, 2000 and by written order on April 6, 2000, a FSO pursuant to HRS § 706–644 (Supp.1998).[2] Inasmuch as the original sentence of Defendant–Appellant Raymond Feliciano (Defendant) on March 29, 1995,[3] made restitution a condition of probation, restitution could not later be ordered as a FSO pursuant to § 706–644 (Supp.1998).

I.

On September 6, 1994, Defendant was indicted for burglary in the first degree in violation of HRS § 708–810. On December 5, 1994, Defendant entered a plea of no contest to the charge. Defendant was later sentenced to five years' probation. The terms and conditions of probation included restitution in the amount of $1,105.00 to be paid beginning on March 29, 1995.[4] The statute in effect at the time of Defendant's proceeding was HRS § 706–644 (1993). It stated in pertinent part as follows:

**Consequences of nonpayment; imprisonment for contumacious nonpayment; summary collection.** (1) *When a defendant sentenced to pay* a fine or *restitution defaults* in *the payment thereof* or of any installment, *the court, upon the motion of the prosecuting attorney* or upon its own motion, *may require the defendant to show cause why the defendant's default should not be treated as contumacious* and may issue a summons or a warrant of arrest for the defendant's appearance. Unless the defendant shows that the defendant's default was not attributable to an intentional refusal to obey the order of the court, or to a failure on the defendant's part to make a good faith effort to obtain the funds required for the payment, the court shall find that the defendant's default was contumacious and may order the defendant com-

4. The Special Terms and Conditions of Defendant's Probation state in pertinent part: "B. You shall make restitution in the amount of $1,105; C. Pay the restitution at the rate of at least $5 per month/commencing May 1, 1995, with future modifications in the payment schedule, as may be dictated by changes in employment or other pertinent personal circumstances, to be made in accordance with the Adult Probation Division's Restitution Computation Formula[.]"

mitted until the fine, restitution, or a specified part thereof is paid.

. . . .

(4) *If it appears that the defendant's default in the payment of a fine or restitution is not contumacious, the court may make an order allowing the defendant additional time for payment,* reducing the amount thereof or of each installment, or revoking the fine or restitution or the unpaid portion thereof in whole or in part.

(5) Upon any contumacious default in the payment of a fine or restitution or any installment thereof, execution may be levied and such other measures may be taken for the collection of the fine, or restitution, or the unpaid balance thereof as are authorized for the collection of an unpaid civil judgment entered against the defendant in an action on a debt. The levy of execution for the collection of a fine or restitution shall not discharge a defendant committed to imprisonment for nonpayment of the fine or restitution until the amount of the fine or restitution has actually been collected or accounted for[.]

(Emphases added).

On March 10, 2000, Plaintiff–Appellee State of Hawai'i (the prosecution) filed a motion for a FSO. Four days before the completion of Defendant's probation period on March 28, 2000, the court orally ruled that it would grant the motion. Subsequently, on April 6, 2000, the court entered an order granting the prosecution's motion for a FSO in the amount of $1,105.00, pursuant to HRS § 706–644(5) (Supp.1998). HRS § 706–644, which had been amended effective July 20, 1998, stated in pertinent part:

**Consequences of nonpayment; imprisonment for contumacious nonpayment; summary collection.** (1) *When a defendant is sentenced pursuant to section 706–605,* granted a conditional discharge pursuant to section 712–1255, or granted a deferred plea pursuant to chapter 853, *and the defendant is ordered to pay* a fine or *restitution,* whether as an independent order, as part of a judgment and sentence, *or as a condition of probation* or deferred plea, *and the defendant defaults in the payment thereof* or of any installment, *the court, upon the motion of the prosecuting attorney* or upon its own motion, *may require the defendant to show cause why the defendant's default should not be treated as contumacious* and may issue a summons or a warrant of arrest for the defendant's appearance. Unless the defendant shows that the defendant's default was not attributable to an intentional refusal to obey the order of the court, or to a failure on the defendant's part to make a good faith effort to obtain the funds required for the payment, the court shall find that the defendant's default was contumacious and may order the defendant committed until the fine, restitution, or a specified part thereof is paid . . . .

(4) *If it appears that the defendant's default in the payment of a fine or restitution is not contumacious, the court may make an order allowing the defendant additional time for payment,* reducing the amount of each installment, or revoking the fine or the unpaid portion thereof in whole or in part, or converting the unpaid portion of the fine to community service. *A defendant shall not be discharged from an order to pay restitution until the full amount of the restitution has actually been collected or accounted for.*

(5) Unless discharged by payment or, in the case of a fine, service of imprisonment pursuant to subsection (3), an order to pay a fine or restitution, whether as an independent order, as a part of a judgment and sentence, *or as a condition of probation* or deferred plea pursuant to chapter 853, *may be collected in the same manner as a judgment in a civil action.* The State or the victim named in the order may collect the restitution, including costs, interest, and attorney's fees, pursuant to section 706–646. The State may collect the fine, including costs, interest, and attorney's fees pursuant to section 706–647.

HRS § 706–644 (Supp.1998) (emphases added).

The court did not find that Defendant's default was contumacious. On July 7, 2000, Defendant filed a motion for reconsideration or, in the alternative, motion to correct illegal sentence. On July 25, 2000, the court denied

the motion for reconsideration and stated it had jurisdiction based on its inherent authority and HRS § 706–644 to issue a FSO. On September 25, 2000, the court issued its findings of fact, conclusions of law, and order denying Defendant's motion for reconsideration or, in the alternative, to correct an illegal sentence.

## II.

Defendant appeals from the aforesaid September 25, 2000 findings, conclusions, and order. On appeal, he argues that the court erred in issuing the FSO for four reasons: (1) under *State v. Kala*, 6 Haw.App. 253, 718 P.2d 1117 (1986),[5] *overruled on other grounds by State v. Viloria*, 70 Haw. 58, 759 P.2d 1376 (1988), the court had no jurisdiction to enter the April 6, 2000 FSO; (2) the amendments promulgated in 1998 to HRS § 706–644 cannot be applied retroactively to Defendant's proceedings which began in 1994; (3) the FSO increased the severity of the original judgment and sentence imposed on Defendant on March 29, 1995, thereby violating Defendant's right against double jeopardy; and (4) the court erroneously converted the $1,105.00 condition of probation into a FSO. Because we essentially agree with points (1), (2), and (4), it is unnecessary to discuss Defendant's third point.

## III.

■ In *State v. Murray*, 63 Haw. 12, 621 P.2d 334 (1980), this court recognized restitution as an accepted sentencing disposition under the Hawai'i criminal justice system. Restitution contains a rehabilitative component, as its purpose is not only to repay the person injured by the criminal act, but also to develop in the offender "a degree of self-respect and pride" for having "righted a wrong committed." *Id.* at 19 n. 11, 621 P.2d at 339 n. 11 (citing Sen. Stand. Com. Rep. No. 789, in 1975 Senate Journal, at 1132), *overruled on other grounds by State v. Gaylord*, 78 Hawai'i 127, 152–53, 890 P.2d 1167,

1192–93 (1995) (disagreeing with *Murray's* conclusion that restitution encompasses the punishment of the offender and explaining that restitution orders are limited to an amount the defendant can afford to pay (citation omitted)).

In *Gaylord*, it was recognized that restitution is "quasi-civil" in nature because it is designed to compensate the victim as an adjunct of punishment. 78 Hawai'i at 152, 890 P.2d at 1193. *Gaylord* said that "an order of restitution or reparation [is] available as a free-standing sanction, to be imposed alone or in combination with other sanctions, including imprisonment." *Id.* at 155, 890 P.2d at 1194 (brackets in original) (quoting ABA Standards § 18–3.15 commentary at 112 n. 17).

Subsequently, *State v. Yamamoto*, 79 Hawai'i 511, 512, 904 P.2d 525, 526 (1995), indicated that restitution, if imposed as a condition of probation, cannot extend beyond the end of the probationary period. In *Yamamoto*, the defendant was sentenced on October 29, 1986 to pay $118,000.00 in restitution and to serve a five-year term of probation. *Id.* at 513, 904 P.2d at 527. The special conditions of Yamamoto's probation stated in pertinent part that "[Yamamoto] must pay the restitution at the rate of FIFTY DOLLARS ($50) per month." *Id.* Throughout the probationary period, Yamamoto complied with the court order by paying the aforementioned $50.00 per month. *Id.* at 514, 904 P.2d at 528.

On October 22, 1991, six days prior to the completion of Yamamoto's five-year probationary period, the prosecution moved to revoke probation and to have Yamamoto resentenced on the ground that although he had paid $50.00 a month as ordered, he had failed to pay the entire $118,000.00 during the five-year period. *Id.* On April 6, 1992, the sentencing court granted the prosecution's motion and resentenced Yamamoto to a second five-year probationary term. *Id.* In addition, the sentencing court also ordered the defen-

---

5. In *Kala*, the Hawai'i Intermediate Court of Appeals (ICA) relied on HRS § 706–630 (1976), stating that once "Defendant's probation expired ... Defendant was discharged, and the court had no further jurisdiction over him. All orders of the court thereafter were illegal and unenforceable, including the ... order to make restitution to the victim's insurance company." 6 Haw.App. at 259, 718 P.2d at 1121–22.

dant to continue to pay restitution until the balance of restitution ($114,850.00) was paid and to execute a promissory note that was non-dischargeable in bankruptcy. *Id.*

On appeal, this court concluded that, with respect to conditions of probation, "all conditions of probation must come to term within five years pursuant to HRS § 706–623." [6] *Id.* at 516 n. 6, 904 P.2d at 530 n. 6. Thus, this court found the order against Yamamoto, to execute a promissory note for the balance owed as a condition of probation, invalid. *Id.* It was explained that the order violated HRS § 706–623 because it would make the defendant "civilly liable to the State for an indefinite period of time and, therefore, would not come to terms within five years." *Id.*[7] Accordingly, the court vacated the sentencing court's revocation of probation and concluded that restitution ordered as a condition of probation cannot extend beyond the end of the probation period. *Id.* However, *Yamamoto* went on to note that, "[o]n the other hand, if the restitution order is not a condition of probation but an authorized freestanding sanction, the procedure to enforce payment is provided for by HRS § 706–644 (1993)." *Id.*

■ *Yamamoto* is instructive here. In the instant case, restitution was originally ordered as a condition of probation. The court sought to enter a FSO prior to the probationary period ending. *Yamamoto* indicates that because restitution had been imposed as a condition of probation, the court could not subsequently convert it into a FSO or extend the condition beyond the probationary period.

In the case at hand, the original judgment and sentence specifically makes the payment of the entire sum of the restitution a condition of probation. Because this requirement is a condition of probation, it cannot be characterized as a FSO. The court here sought to enter a FSO prior to the probationary period

ending. But, inasmuch as restitution was a condition of probation, it could not then be converted into a FSO.

## IV.

■ Moreover, the 1998 version of HRS § 706–644 cannot be retroactively applied to Defendant's case. The legislature expressly provided that HRS § 706–644 "does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date [July 20, 1998]." 1998 Haw. Sess. L. Act 269 § 7. This case is analogous to *State v. Kai,* 98 Hawai'i 137, 44 P.3d 288 (App.2002).

Defendant Kai was sentenced on March 28, 1990, to five years' probation with special conditions, including a requirement that she make restitution in the amount of $20,708.00, payable in installments of not less than $75.00. *Id.* Due to Kai's noncompliance with her conditions of probation, the sentencing court issued an order on May 16, 1995, revoking probation and resentencing Kai to five more years of probation. *Id.* at 138, 44 P.3d at 289. As part of the resentencing order, the court imposed special conditions that she *inter alia* "make restitution in the amount of $19,658.00, said amount payable in installments of not less than $75.00 a month" and "sign a promissory note ... for the total amount of restitution due." *Id.* In 1998, as the ICA noted, the legislature enacted Act 269 which (1) "amend[ed] HRS § 706–644, to provide that a defendant would not be discharged from an order to pay restitution until the restitution was paid in full, and to allow for collection of restitution in the same manner as a civil judgment[,]" *id.* at 139–40, 44 P.3d at 290–91 (footnote omitted), (2) "enforce[d] § 706–644 when the restitution is imposed either as an independent order under § 706–605 or as a condition of probation under § 706–624[,]" *id.* at 140, 44 P.3d at 291,

---

6. HRS § 706–623 (1993) stated in pertinent part:
   **Terms of probation.** When the court has sentenced a defendant to be placed on probation, the period of probation shall be five years upon conviction of a felony ... unless the defendant is sooner discharged by order of the court.
   (repealed June 30, 1995).

7. In apparent *dictum,* this court said that "the sentencing court ... erroneously assumed that the order to pay $118,000.00 in restitution was a condition of probation. In actuality, the restitution order was an authorized free standing sanction imposed in combination with Yamamoto's sentence of probation." 79 Hawai'i at 515, 904 P.2d at 529 (citations omitted).

and (3) "amended HRS § 706–630 . . . [to permit] . . . any action under this chapter to collect unpaid fines, restitution, attorney's fees, costs, or interest" to survive "termination of the period of the probation or the earlier discharge of the defendant," *id.* (emphasis omitted).

On April 4, 2000, the prosecution moved for a FSO in the amount of $15,233.00 pursuant to the 1998 amended version of HRS § 706–644 despite Kai's timely payments of $75.00 per month in compliance with the 1995 resentencing order. *Id.* at 138, 44 P.3d at 289.

On April 25, 2000, Kai filed a memorandum in opposition, in which she argued that the sentencing court had no authority to issue a FSO because she had already been sentenced and was not in violation of the conditions of probation stated in the 1995 resentencing order. *Id.* Nevertheless, the FSO was granted by the sentencing court ordering Kai to pay the amount of $15,233.00 at a rate of at least $75.00 per month. *Id.*

The ICA reversed the sentencing court's order of restitution on the ground that Act 269 could not be retroactively applied to Kai:

Act 269 was enacted after Kai was sentenced and by its own express terms did not apply retroactively to extend Kai's obligation to pay restitution beyond her period of probation. Additionally, it did not empower the circuit court to resentence Kai to a free standing restitution order. Act 269 by its own express language did not affect penalties that were incurred before the Act's effective date (July 20, 1998). *Kai had incurred her penalties in 1990 and 1995.*

*Id.* at 141, 44 P.3d at 291 (emphasis added). Because the amendments made by Act 269 were not retroactive, the sentencing court was not authorized to impose a FSO pursuant to the 1998 version of HRS § 706–644. *Id.*

In an earlier case, *State v. Werner,* 93 Hawai'i 290, 1 P.3d 760 (App.2000), the ICA had also determined that retroactive application of HRS § 706–644 (Supp.1998) was prohibited. In *Werner,* the sentencing court had said: "This restitution order shall be a free-standing order, shall survive the expiration of parole, and shall be enforceable as any civil judgment pursuant to Act 269, 1998, Session Laws of Hawai'i, and Section 706–605(d), H.R.S." *Id.* at 294, 1 P.3d at 764. According the ICA, "Act 269 became effective upon its approval on July 20, 1998." *Id.* at 295, 1 P.3d at 765. "Werner's case began on July 1, 1997, and Act 269 does not apply to Werner's case because Act 269 expressly provides that it does not 'affect rights and duties that matured, penalties that were incurred, and proceedings that were begun, before its effective date' of July 20, 1998." *Id.; see also State v. Johnson,* 92 Hawai'i 36, 44, 986 P.2d 987, 995 (1999) (holding that "HRS § 706–644 as amended in 1998, does not apply to this case because the proceedings at issue began on September 15, 1997")

In the instant case, Defendant was indicted on September 6, 1994 and later sentenced on March 29, 1995. The proceedings in this case thus began before the 1998 amendments to HRS § 706–644(5) became effective on July 20, 1998. Like Kai, Defendant was sentenced before 1998. Because the 1998 amendments to HRS § 706–644 are not retroactive, the sentencing court could not impose a FSO as authorized under the post–1998 version of HRS § 706–644. Therefore, a sentencing court has no authority to impose a FSO pursuant to the 1998 amendments to HRS § 706–644 if the proceedings in the case began prior to the July 20, 1998 effective date of the amendments.

## V.

Although a sentencing court could not impose a FSO pursuant to the 1998 amendments to HRS § 706–644, if the proceedings against a defendant began prior to July 20, 1998, it was possible to impose a similar FSO if the FSO was imposed separately and independent of other sentences.

Prior to the 1998 amendment to HRS § 706–644, this court indicated in *Yamamoto* that a sentencing court could impose a FSO that extended beyond a probationary period, citing the pre–1998 version of HRS § 706–644 (1993) and *Gaylord.* 79 Hawai'i at 515–16 nn. 5 & 6, 904 P.2d at 529–30, nn. 5 & 6. Pre–1998, HRS § 706–644(4) (1993) stated in

pertinent part that "[i]f ... defendant's default in the payment of a fine or restitution is not contumacious, the court may make an order allowing the defendant additional time for payment...." *Yamamoto* apparently relied on this provision in determining that a FSO could be imposed and, thus, could extend beyond a sentence of probation. 79 Hawai'i at 515–16 nn. 5–6, 904 P.2d at 529–30 nn. 5 & 6.

In *State v. Griffin*, 83 Hawai'i 105, 924 P.2d 1211 (1996), this court observed that an order of restitution is both a condition and a FSO. *Id.* at 108, 924 P.2d at 1214 (citing *Yamamoto*, 79 Hawai'i at 515–16 nn. 5 & 6, 904 P.2d at 529–530 nn. 5 & 6). As to any perceived difference between *Griffin* and *Yamamoto*, we clarify that in pre–1998 cases, a FSO could have been imposed at the time of the original sentence if it was imposed as a separate order, independent of a sentence of probation and/or imprisonment at the time of sentencing.

In the instant case, the original judgment and sentence specifically makes the payment of the entire sum of the restitution a condition of probation. The court sought to enter a FSO prior to the ending of the probationary period. Payment of restitution was an original condition of Defendant's probation— not a separate order, independent of probation. The sentencing court therefore could not convert it into a FSO. Therefore, the FSO in this case was invalid.

### VI.

The court's April 6, 2000 order granting the motion for FSO and the September 25, 2000 order denying the motion for reconsideration or to correct illegal sentence are vacated and the case is remanded for proceedings consistent with this decision.