NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000147
23-FEB-2018
08:04 AM

NO. CAAP-15-0000147

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
JOHN KENN, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 08-1-0762)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Reifurth and Ginoza, JJ.)

On May 20, 2008, Defendant-Appellant John Kenn, an electrician at Pearl Harbor, was cumulatively charged with thirty-seven counts of first, second, third, and fourth degree sexual assault against a minor, occurring over a period of approximately seven years. Kenn pled guilty to reduced charges on thirty-seven cumulative counts of second, third, and fourth degree sexual assault. On July 8, 2009, the Circuit Court of the First Circuit ("Circuit Court") sentenced Kenn to five years probation with eighteen months in prison on the second degree counts, five years probation with one year in prison on the third degree counts, one year probation with one year in prison on the fourth degree counts, with all sentences to run concurrently, and various fines. The court further ordered that Kenn participate satisfactorily in the Hawai'i Sex Offender Treatment Program ("HSOTP").

On June 25, 2014, Senior Probation Officer Marvin Williams of the Adult Client Services Branch moved to revoke Kenn's probation, otherwise set to expire on July 7, 2014, on the ground that Kenn "failed to participate satisfactorily in the

[HSOTP]." After a hearing on Williams' motion, the Circuit Court[1] found that Catholic Charities Hawai'i ("Catholic Charities"), Kenn's treatment services provider, was a proper sex offender treatment program and that Kenn had inexcusably failed to comply with a substantial requirement of his probation. The court resentenced Kenn to five years of probation in the Hawai'i Opportunity Probation with Enforcement program. On February 23, 2015, the Circuit Court entered its Order of Resentencing; Revocation of Probation ("Revocation/Resentencing Order"). On July 6, 2015, the Circuit Court issued its Findings of Fact and Conclusions of Law ("FOF/COL"). Kenn appeals from the Revocation/Resentencing Order and the FOF/COL.

On appeal, Kenn alleges that the Circuit Court erred because (1) he did not intentionally or willfully attempt to circumvent a substantial requirement of his probation, (2) "satisfactory participation" in the HSOTP was never adequately explained to him, and (3) the Catholic Charities program does not meet the statutory requirements of HRS chapter 353E-1. In support, Kenn contests the propriety of the Circuit Court's FOF/COL 7-9, 11, 12, 15, 16, 18-23, and the court's oral finding that "sending [Kenn] to Catholic Charities complied with the provisions of HRS Chapter 353E."

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Kenn's points of error as follows and affirm.

1.    The Circuit Court did not err when it found that Kenn inexcusably failed to comply with a substantial requirement imposed as a condition of probation.

As an express condition of his probation, Kenn was required to "obtain and maintain sex offender treatment . . . until clinically discharged with the concurrence of your probation officer." Kenn's probation officer presented the court with a motion to revoke probation, filed on June 25, 2014 with

---

[1]    The Honorable Steven S. Alm presided.

2

regard to Kenn's probation set to expire on July 7, 2014. The motion alleged that Kenn had failed to participate satisfactorily in the HSOTP. A subsequent declaration of counsel filed by the State on December 11, 2014 alleged that Kenn had not received a clinical discharge from HSOTP.

Kenn contends that, even though he had not been clinically discharged from the program by the time that his probation was set to end he was nevertheless in compliance with the terms and conditions of probation, he had not failed to comply with a substantial requirement of the probation, and the Circuit Court erred in finding that he had. Kenn's challenge is premised on HRS section 706-625(3), which directs that probation be revoked when "the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order or has been convicted of a felony." Haw. Rev. Stat. § 706-625(3) (Supp. 2013). "Inexcusably" under section 706-625(3) is defined as a "willful and deliberate attempt . . . to circumvent the order of the court." *State v. Villiarimo*, 132 Hawai'i 209, 222, 320 P.3d 874, 887 (2014) (quoting *State v. Nakamura*, 59 Haw. 378, 381, 581 P.2d 759, 762 (1978)). Furthermore, "the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." *State v. Stocker*, 90 Hawai'i 85, 92, 976 P.2d 399, 406 (1999) (quoting *State v. Mitsuda*, 86 Hawai'i 37, 44, 947 P.2d 349, 356 (1997)). Kenn contends that his was not a willful and deliberate attempt to circumvent his probation order.

"[A] violation of the terms of probation indicates that the probationer has not yet received the full rehabilitative benefit that probation is designed to induce." *State v. Viloria*, 70 Haw. 58, 61-62, 759 P.2d 1376, 1378-79 (1988). The sentencing court has three options in that situation; it may "(1) modify the terms of probation; (2) revoke probation and sentence [probationer] to imprisonment; or (3) revoke probation and resentence [probationer] to another term of probation." *Id.* at 62, 759 P.2d at 1379. Whether probation should be revoked is in the sole discretion of the sentencing court. *State v. Yamamoto*, 79 Hawai'i 511, 514, 904 P.2d 525, 528 (1995) (quoting *State v.*

*Huggett*, 55 Haw. 632, 635-36, 525 P.2d 1119, 1122 (1974)).

> While the power of the court to revoke or to modify the conditions of probation is well established, the exercise of this authority must rest upon the sound and enlightened judgement of the trial court. And where the record reflects justifiable cause for the revocation or the modification of probation terms, the trial court's determination will be sustained.

*Id.* (quoting *Huggett*, 55 Haw. at 635-36, 525 P.2d at 1122).

Kenn's argument is similar to the argument raised by the defendant in *Yamamoto* where the Hawai'i Supreme Court held that the trial court abused its discretion in revoking Yamamoto's probation for failure to pay the entire $118,000 in restitution that was ordered as part of his sentence. Noting that the restitution order was a "free-standing sanction imposed in combination with Yamamoto's sentence of probation," the court held that Yamamoto had complied with the probation condition that he pay restitution at the rate of at least $50 per month, that he therefore complied with the terms of his probation, and that the trial court therefore had abused its discretion in revoking probation on the basis of his failure to pay off the entire $118,000. *Yamamoto*, 79 Hawai'i at 529-30, 904 P.2d at 515-16. Here, however, the requirement that Kenn continue with sex offender treatment "until clinically discharged with the concurrence of your probation officer" was an express condition of Kenn's probation, not a free-standing sanction.

Based on credible evidence, the Circuit Court concluded that completion of sex offender treatment was a substantial requirement of Kenn's probation and that merely "being present for treatment" was insufficient. The court found that Kenn's therapists and co-facilitators of the veterans-only therapy group at Catholic Charities, Joannie Fujii and Raul Sabat, both viewed Kenn as making less-than-satisfactory progress. Fujii and Sabat were specifically concerned with requirements of cooperation and respect and characterized Kenn as resistant insofar as he did not turn in all of his assigned homework, had not completed the required autobiography, had not tried sufficiently hard at his assigned tasks, demonstrated a pattern of shutting down, and had not changed his intimidating behavior. As found by the Circuit Court, "[t]he issue of intimidating behavior was very important

4

to [] Fujii, as the underlying crime involved [] Kenn intimidating and controlling his victim from ten years old until the age of eighteen . . . ." Finally, Probation Officer Marvin Williams testified that Kenn appeared to not accept the fact that he was told that he may not graduate on time, apparently believing that he deserved a timely discharge. The evidence meets and exceeds the necessary credible evidence to affirm the Circuit Court's findings, and accordingly, the court's findings are not clearly erroneous.

The Circuit Court did not err in its conclusion that Kenn's violation was inexcusable. Kenn failed to complete the sex offender treatment program by the time that his probation was set to expire. Furthermore, the corroborating evidence presented by Williams and Sabat counter Kenn's assertions that Fujii's opinion of his behavior was "subjective" and "tainted by her own personal bias and prejudice," and establish that Kenn's underlying actions (which served as the basis for his inability to obtain timely discharge from the program) were intentional and a deliberate attempt to circumvent the Circuit Court's probation order. *See Villiarimo*, 132 Hawai'i at 222, 320 P.3d at 887. Therefore, substantial evidence adduced at the hearing on the motion supports the Circuit Court's conclusion that Kenn's failure to participate satisfactorily in HSOTP, a substantial requirement imposed as a condition of his probation, was inexcusable.

2. Kenn was given adequate notice of what constituted satisfactory participation in the HSOTP.

Kenn argues that the Circuit Court erred because "satisfactory participation" in the HSOTP was never adequately explained to him. He asserts that receiving written instructions on how to make satisfactory progress would have allowed him to objectively comply with the terms and conditions of probation. Kenn relies on HRS section 706-624(3), which sets out the guidelines for written statements of probation conditions:

> The court shall order the defendant at the time of sentencing to sign a written acknowledgment of receipt of conditions of probation. The defendant shall be given a written copy of any requirements imposed pursuant to this section, stated with

5

> sufficient specificity to enable the defendant to comply with the conditions accordingly.

Haw. Rev. Stat. § 706-624(3) (Supp. 2013). Similarly, Kenn argues that "[a]n essential component of [the] due process rights is that individuals be given fair warning of acts which may lead to revocation." *United States v. Simmons*, 812 F.2d 561, 565 (9th Cir. 1987) (citing *United States v. Dane*, 570 F.2d 840, 843 (9th Cir. 1977)).

Kenn's reliance on HRS section 706-624(3) and *Simmons* appears to be misplaced. Kenn was indisputably given a written copy of the conditions of his probation to which he agreed. What Kenn argues is that he was not given a sufficient explanation of how to obtain discharge from the Catholic Charities treatment program.

Upon entering the Catholic Charities program, Kenn signed several contracts outlining the terms and conditions of his treatment. Kenn argues that because he was given three different contracts, and because his most recent contract was "extensively modified" and "contained many conditions that were different from those included in the previous two contracts," notice was not properly provided. However, the only contract condition that he specifically argues led to a failure of notice is condition #11 which stated: "COOPERATION/RESPECT. I understand that I must behave respectfully and non-threateningly and follow the directions of my treatment provider." Kenn does not suggest that he did not know how to behave respectfully and non-threateningly, or that he did not understand what that requirement meant or that Catholic Charities would determine if he met the condition.

Kenn argues, relying on *United States v. Hamilton*, 708, F.2d 1412 (9th Cir. 1983) (finding that where a subsequent probation officer expected the defendant to conform to a more rigid regimen, the probationer must be given proper notice), that being under the supervision of three different probation officers over the period of his probation led to a failure of notice. Kenn, however, does not establish any difference in expectations between his probation officers and specifically fails to assert

that his latest probation officer, Officer Williams, held Kenn to a more rigid regimen, like that in *Hamilton*.

Instead, the evidence shows that Kenn was given a form titled "How to Make Treatment Progress" and the instructions explicitly stated that "[t]reatment manual assignments are to be completed thoughtfully." Fujii testified that Kenn received a workbook that contained important assignments and was told that he could graduate if he completed the workbook to a certain standard and put the lessons he learned into practice. Sabat testified that after Kenn was informed by Fujii that he may not be discharged by July, he went into a "holding pattern," his motivation appeared to "diminish[] some," he began not turning in work, and presented differently in group therapy.

Kenn was counseled on how he could change his behavior in order to receive a clinical discharge. Fujii testified that she met with Kenn to discuss what he needed to do for his clinical discharge, and that he wrote down some of those goals. Kenn was told that a major concern with his behavior was that others in his group setting experienced him as intimidating. Sabat also testified that Kenn was given a list of the things he would need to work on.

If at any point Kenn felt that he was not progressing in therapy, he had the option to initiate individual therapy. Nevertheless, he never pursued that option.

Substantial evidence adduced at the hearing supports the finding that Kenn was given ample notice as to the conduct expected of him. At the very least, Kenn knew that a major concern was his intimidating behavior, which he failed to correct. Notwithstanding the fact that there was necessarily some subjectivity involved in the Catholic Charities' evaluation of Kenn's performance, substantial evidence adduced at the hearing supports the finding that Kenn was given adequate notice of what was expected of him in order to be discharged from the Catholic Charities program.

3. Kenn fails to show that the Catholic Charities' program does not meet the statutory requirements set forth in HRS Chapter 353E-1.

In his third point of error, Kenn argues that the Circuit Court erred in granting the State's Motion for Revocation of Probation because the Catholic Charities' program does not meet statutory requirements. Specifically, Kenn argues that: (1) the educational component of the statewide sex offender treatment program established by HRS section 353E-1(5)[2] requires that "appropriate education be made available for providers of sex offender treatment"; (2) that Fujii and Sabat "do not meet this educational component"; and (3) that Catholic Charities failed to provide a "uniform treatment philosophy" in violation of HRS section 353E-1(1).

HRS section 353E-1 establishes a statewide sex offender treatment program on a "cooperative basis." The statute itself sets no specific standards, and does not reflect an intent to affect a trial court's discretion in determining whether to revoke probation. Therefore, the Circuit Court did not err in concluding that "sending [Kenn] to Catholic Charities" complied with the provisions of HRS chapter 353E. Furthermore, the argument that Kenn was subjected to a non-uniform treatment fails in light of the statute not imposing any specific standards and

---

[2]    HRS section 353E-1 (1993) states, in relevant part, that:

> There is established a statewide, integrated program for the treatment of sex offenders in the custody of the State to be implemented on a cooperative basis by the department of public safety, the judiciary, and the Hawai'i paroling authority, and any other agency that may be assigned sex offender oversight responsibilities. The agencies shall:
>
> (1)    Develop and continually update, as necessary, a comprehensive statewide master plan for the treatment of sex offenders that provides for a continuum of programs under a *uniform treatment philosophy*;
>
> (2)    Develop and implement a statewide, integrated system of sex offender treatment services and programs that reflect the goals and objectives of the master plan;
>
> .    .    .    .
>
> (5)    Develop appropriate training and education programs for public and private providers of sex offender treatment, assessment, and supervision services.

(Emphasis added).

the substantial evidence supporting the Circuit Court's apparent conclusion that it was Kenn's own performance which varied over time.

Based on the foregoing, the February 23, 2015 Order of Resentencing; Revocation of Probation and the July 6, 2015 Findings of Fact and Conclusions of Law entered by the Circuit Court of the First Circuit are affirmed.

DATED:  Honolulu, Hawai'i, February 23, 2018.

On the briefs:

Victor J. Bakke
(Law Office of Victor J. Bakke)
for Defendant-Appellant.

James M. Anderson,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge