**Electronically Filed
Supreme Court
SCWC-22-0000056
17-JUN-2024
10:11 AM
Dkt. 7 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

MELISSA FAY,
Petitioner/Defendant-Appellant.

SCWC-22-0000056

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000056; CASE NO. 2DTA-21-00637)

JUNE 17, 2024

RECKTENWALD, C.J., McKENNA, EDDINS, GINOZA, AND DEVENS, JJ.

OPINION OF THE COURT BY EDDINS, J.

This case is about a court's statutory authority to order a criminal defendant subject only to an independent restitution order to attend ongoing proof of compliance hearings.

**I.**

Melissa Fay drove her car into a tree. The State prosecuted her for an open container, intoxicated driving, inattention to driving, and driving without insurance. She resolved her case by plea agreement. It did not include imprisonment or probation. Fay agreed to pay a freestanding order of restitution.

The District Court of the Second Circuit followed the plea deal. Then it ordered indefinite compliance hearings to monitor Fay's restitution payments. Fay protested. She unsuccessfully argued that Hawai'i's restitution enforcement statute, Hawai'i Revised Statutes (HRS) § 706-644 (2014 & Supp. 2021), limits the court's authority.

Fay appealed.

The Intermediate Court of Appeals agreed with the district court. It held that an independent order of restitution by itself empowers a criminal court to retain jurisdiction over a person who owes restitution. Setting recurrent proof of compliance hearings fell within a court's general power to enforce its orders, the ICA ruled.

We conclude that the district court exceeded its statutory authority. Because HRS § 706-644, the specific law relating to restitution enforcement, controls over the court's general powers to enforce judgments, we hold that the court may only

order a compliance hearing regarding restitution payments if a defendant is on probation or the defendant "defaults" on payment per HRS § 706-644(1).

## II.

In July 2021, Fay drove home from a bar. She crashed her car into a tree. Maui Police arrived and arrested her.

The Department of the Prosecuting Attorney, County of Maui (State) charged Fay with four crimes: (1) storage of an open container, HRS § 291-3.3(a) (2020); (2) operating a vehicle under the influence of an intoxicant (OVUII), HRS § 291E-61(a)(1) and (b)(1) (2020 & Supp. 2021); (3) inattention to driving, HRS § 291-12 (2020); and (4) no motor vehicle insurance, HRS § 431:10C-104(a) (2019).

The State and Fay reached a plea agreement. The State dismissed the open container charge. Fay pled no contest to OVUII and no insurance. As to count 3, inattention to driving, the State amended it to criminal property damage in the fourth degree, HRS § 708-823 (2014). Fay pled no contest. She also agreed to pay reasonable and verified restitution. See HRS § 706-646 (2014 & Supp. 2019) ("The court shall order the defendant to make restitution for reasonable and verified losses suffered by the victim or victims as a result of the defendant's offense when requested by the victim.").

Kahului Auto Sales, Inc., who owned the car Fay wrecked, wanted restitution. In a victim claim report, the Judiciary's Monetary Restitution Program recommended that Fay pay Kahului Auto Sales $6,504. Fay and the State agreed to that amount. They executed an independent restitution order prepared by the prosecution. The independent order – commonly called a freestanding order - referenced HRS § 706-647 (2014).

District Court Judge Lauren Akitake asked Fay what she could afford to pay. Fay said $50 per month. The court ordered her to pay that amount.

On her own initiative, Judge Akitake ordered Fay to return to the district court in six months. The court told Fay she would have ongoing proof of compliance hearings until she paid off the restitution. "[I]t may take awhile," the court advised Fay. (True, at $50 per month, eleven years.)

Fay's attorney objected to setting future hearing dates. Counsel explained that once the district court entered final judgment and the independent restitution order, its jurisdiction over Fay ended. Counsel pointed out that HRS § 706-644 does not give the court an immediate, ongoing supervisory power over a defendant sentenced only to a freestanding order of restitution. Rather, a victim may initiate civil enforcement of the order, or, if the defendant defaults, "the court, upon the motion of

the prosecuting attorney or upon its own motion" may order them to appear.  HRS § 706-644(1).

Counsel added that apparently the Second Circuit stood alone as the only circuit to make non-probation defendants continually return to criminal court after signing a freestanding restitution order.  The district court was unswayed.

Counsel also leveled a constitutional challenge.  He said due process forbids the court from retaining years-long jurisdiction over an indigent defendant who committed a petty misdemeanor offense.  The district court rejected that argument, too.

Fay appealed.

In a summary disposition order, the ICA sided with the State.  The ICA affirmed the district court, concluding that it possessed "post-judgment jurisdiction to enforce its order that Fay pay restitution."

The ICA reasoned that the district court has the general power to enforce its judgments per HRS § 604-7 (2016) ("The district courts may: . . . (4) Enforce judgments; and punish contempts according to law").  Then the ICA observed that HRS § 706-644, the law that lets victims enforce restitution civilly, aspired to give victims an additional enforcement mechanism, not an exclusive one.  Thus, it concluded, "[t]here

is no language anywhere in the statutes or the commentary indicating that the Legislature intended to divest the district courts presiding over criminal cases from jurisdiction over enforcement of restitution orders."

Fay applied for cert, and we accepted.

Fay's briefing and cert application argue that the district court's compliance hearings are unconstitutional.  In Fay's view, the ongoing hearings create "two classes of defendants: those who can afford to pay restitution and end their criminal cases, and people like Ms. Fay who cannot and are required to come back to the courthouse for years on end."  Because the district court's compliance hearings lack statutory authorization, it is unnecessary to decide Fay's constitutional claims.

**III.**

The authority to order restitution flows from HRS §§ 706-605(7) (2014 & Supp. 2016) and 706-646.  Those two statutes govern *when* restitution is required, *who* is entitled to receive it, and *how* the court determines the amount, time, and manner of payment.

Hawaiʻi law provides multiple ways to order restitution. For instance, as a condition of probation.  HRS § 706-624(1)(g) (2014 & Supp. 2016).  Or, as an independent (or freestanding) order.  HRS § 706-644; see also State v. Feliciano, 103 Hawaiʻi

6

269, 273, 81 P.3d 1184, 1188 (2003) (differentiating between these types). Fay did not receive probation; the freestanding order method applies to her.

HRS § 706-644 provides two mechanisms to enforce a freestanding restitution order. A civil court may enforce the order. HRS § 706-644(5). Or, if the defendant defaults, the district court may arrest and imprison the person. HRS § 706-644(1). Unless the person defaults, the law doesn't permit the district court to do anything. The criminal case is over.

HRS § 706-644(1) describes what may happen process-wise when a defendant falls behind, or doesn't pay, restitution per a freestanding order:

> When a defendant is sentenced pursuant to section 706-605, granted a conditional discharge pursuant to section 712-1255, or granted a deferred plea pursuant to chapter 853, and the defendant is ordered to pay a fee, fine, or restitution, whether as an independent order, as part of a judgment and sentence, or as a condition of probation or deferred plea, and the defendant defaults in the payment thereof or of any installment, the court, upon the motion of the prosecuting attorney or upon its own motion, may require the defendant to show cause why the defendant's default should not be treated as contumacious and may issue a summons or a warrant of arrest for the defendant's appearance. Unless the defendant shows that the defendant's default was not attributable to an intentional refusal to obey the order of the court, or to a failure on the defendant's part to make a good faith effort to obtain the funds required for the payment, the court shall find that the defendant's default was contumacious and may order the defendant committed until the fee, fine, restitution, or a specified part thereof is paid.

HRS § 706-644(1) (emphases added).

Titled "Consequences of nonpayment; imprisonment for contumacious nonpayment; summary collection," HRS § 706-644(1)

7

has harsh outcomes for those who do not meet criminal court financial commitments.  Unless a person can show they have made "a good faith effort" to pay a fine, fee or restitution, the court "shall find that the defendant's default was contumacious."  Id.  After that finding of stubborn defiance, the court "may order the defendant committed" until they pay up or their financial commitment is converted to time served.  HRS § 706-644(1), (3).

HRS § 706-644(1) only allows restitution compliance hearings upon a default, then a motion, then a hearing.  Setting a compliance hearing at the outset precociously upends the statutory process.  Since the district court scheduled a court appearance for Fay when it sentenced her, it erred.

HRS § 706-644(1) conditions criminal supervision of a non-probationary defendant's restitution payments *on default*.  For good reason.  Criminal financial obligations "prolong[] criminal justice oversight, creating a type of shadow control that surpasses the original sentence."  Devah Pager, et al., Criminalizing Poverty: The Consequences of Court Fees in a Randomized Experiment, American Sociological Review 4 (2022), https://justicelab.columbia.edu/sites/default/files/content/Criminalizing%20Poverty.pdf [https://perma.cc/YZ5S-X6HC].  The impacts are proportionally larger for misdemeanor defendants; their underlying sentences are brief, but court supervision can

last for years.  Id.  The U.S. Department of Justice warns that indigent defendants (like Fay) "face repeated, unnecessary incarceration for nonpayment of fines and fees."  U.S. Dep't of Justice, *Dear Colleague Letter to Courts Regarding Fines and Fees for Youth and Adults* 2 (2023) https://www.justice.gov/opa/press-release/file/1580546/dl [https://perma.cc/GW3X-LE4X].

We base our decision on HRS § 706-644.  Still, we note that from-the-outset court monitoring of freestanding restitution orders unnecessarily burdens defendants and wastes judicial resources.

Neither a court's general power to enforce its judgments nor the availability of civil enforcement per HRS § 706-644(5) alter our analysis.

For sure, a court may enforce its judgments.  Otherwise, a judgment has little real value.  HRS § 604-7 provides a district court's general power: "[t]he district courts may: . . . (4) Enforce judgments; and punish contempts according to law."

Specific statutes, though, control over general ones. Ho'omoana Found. v. Land Use Comm'n, 152 Hawai'i 337, 344, 526 P.3d 314, 321 (2023).  HRS § 706-644 is a specific statute relating to "consequences of nonpayment" for a court-ordered "fee, fine or restitution."  HRS § 706-644's treatment of restitution orders is more specific than HRS § 604-7's general

power.  So HRS § 706-644 and the restitution-related laws triumph to the extent that those laws conflict with HRS § 604-7. HRS § 604-7 does not empower courts to hold restitution compliance hearings outside HRS § 706-644's parameters.

Similarly, the option of civil enforcement does not enlarge the district court's post-sentencing criminal jurisdiction.  HRS § 706-644(5) allows crime victims to collect restitution "in the same manner as a judgment in a civil action."  Since 1998, the legislature has provided victims with a "'fast track' ability to be compensated for their losses by allowing them to enforce the criminal restitution order as a civil judgment, using all of the civil collection remedies."  Conf. Comm. Rep. No. 89, in 1998 House Journal, at 986.

HRS § 706-644(5) empowers the *victim*, not the district court.  The law does not allow the district court itself to convert a freestanding restitution order into a civil judgment. The victim (or the State) must act.  State v. Johnson, 92 Hawai'i 36, 44, 986 P.2d 987, 995 (App. 1999).  And because there is a tailor-made, civil-judgment-like restitution order, it's not hard to enforce in civil court.  This is an alternative avenue – it does not expand the district court's criminal jurisdiction.

We apply HRS § 706-644(1)'s plain language.  There are only two situations where a court injects itself as a post-judgment enforcer of a restitution order involving an unsupervised former

defendant: compliance hearing upon default, or civil enforcement by the victim or State.

To hold otherwise twists common sense. It stretches Fay's probation-like obligation to appear in court well past the maximum six-month probation term for criminal property damage in the fourth degree, her only probation-eligible offense. HRS §§ 708-823, 706-623(1)(d) (2014 & Supp. 2021). We have previously expressed fairness concerns when ongoing court supervision may result in "combined terms of imprisonment far in excess of the maximum term for [a defendant's] underlying misdemeanor crime." State v. Agdinaoay, 150 Hawai'i 223, 227-28, 500 P.3d 408, 412-23 (2021) (overturned in part by statute).

If Fay keeps pace with the restitution order - paying $6,500 in $50 monthly increments (130 payments) - it will take her nearly eleven years to complete restitution, surpassing the ten-year probation period for a class A felony. HRS § 706-623(1)(a). If the district court continues to order Fay to appear in court every six months, she may have to return to court 21 times without ever being placed on the six-month period of probation for her petty misdemeanor conviction.

Courts presume the legislature does not intend absurd outcomes, so courts interpret laws to avoid unsound, incongruous, or irrational results. State v. Haugen, 104 Hawai'i 71, 76, 85 P.3d 178, 183 (2004). We do so here.

11

**IV.**

We vacate the ICA's judgment on appeal.

| | |
|---|---|
| Benjamin E. Lowenthal<br>(on the briefs)<br>for petitioner | /s/ Mark E. Recktenwald |
| | /s/ Sabrina S. McKenna |
| | /s/ Todd W. Eddins |
| Renee Ishikawa Delizo<br>(on the briefs)<br>for respondent | /s/ Lisa M. Ginoza |
| | /s/ Vladimir P. Devens |

